IN THE COURT OF COMMON PLEAS
BELMONT COUNTY, OHIO

FILED
COMMON PLEAS COURT
BELMONT CO. OHIO

2012 JUL 25 PM 3 58

| | |
|---|---|
| ROBERT E. MURRAY, an individual,<br>47626 Meadowview Drive,<br>St. Clairsville, Ohio 43950;<br><br>MURRAY ENERGY CORPORATION,<br>an Ohio corporation<br>29325 Chagrin Boulevard, Suite 300<br>Pepper Pike, Ohio 44122<br><br>AMERICAN ENERGY CORPORATION,<br>an Ohio corporation<br>43521 Mayhugh Hill Road<br>Beallsville, Ohio 43716<br><br>THE OHIO VALLEY COAL COMPANY,<br>an Ohio corporation;<br>56854 Pleasant Ridge Rd.<br>Alledonia, Ohio 43902;<br><br>    Plaintiffs,<br><br>v.<br><br>THE DAILY GAZETTE COMPANY,<br>a West Virginia Corporation<br>1001 Virginia Street East<br>Charleston, West Virginia 25301<br><br>DAILY GAZETTE PUBLISHING COMPANY,<br>LLC, a Delaware Limited Liability Company<br>2711 Centerville Rd., Suite 400<br>Wilmington, Delaware 19808<br><br>DAILY GAZETTE HOLDING COMPANY,<br>LLC, a Delaware Limited Liability Company<br>2711 Centerville Rd., Suite 400<br>Wilmington, Delaware 19808<br><br>CHARLESTON NEWSPAPERS HOLDINGS,<br>L.P., a Delaware Limited Partnership<br>2711 Centerville Rd., Suite 400<br>Wilmington, Delaware 19808 | Case No.:<br><br>12CV341<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>**COMPLAINT**<br>(Jury Demand Endorsed Hereon) |

STATE OF OHIO
BELMONT COUNTY
CYNTHIA K. MCGEE, CLERK OF COURTS, DO HEREBY CERTIFY THAT THE ABOVE IS A TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE IN THIS OFFICE.

_____ DEPUTY

1

MR. KENNETH W. WARD, JR., an individual; )
926 Greendale Drive )
Charleston, West Virginia 25302 )
                                                                               )
    Defendants. )

## COMPLAINT

Now come Plaintiffs, Robert E. Murray, Murray Energy Corporation, American Energy Corporation, and The Ohio Valley Coal Company, for their Complaint against Defendants, The Daily Gazette Company, Daily Gazette Publishing Company, LLC, Daily Gazette Holding Company, LLC, Charleston Newspaper Holdings, L.P., and Kenneth W. Ward, Jr., and state and allege as follows:

### NATURE OF THE CASE

This is an action for damages against Defendants, The Daily Gazette Company, Daily Gazette Publishing Company, LLC, Daily Gazette Holding Company, LLC, Charleston Newspaper Holdings, L.P., and Kenneth W. Ward, Jr. This case concerns an internet news article first disseminated on the World Wide Web on or about July 18, 2012. The news story, which is directed almost entirely to the professional and personal integrity of Robert E. Murray, Murray Energy Corporation, and The Ohio Valley Coal Company, libels them in words readily understandable to the average reader, causing profound damage. The damages resulting from this news article remove it from the realm of an ordinary libel case because of the serious economic effect on Plaintiffs' business and the thousands of jobs provided directly and/or indirectly by The Ohio Valley Coal Company and American Energy Corporation in the Belmont County area. The ability of Robert E. Murray to secure financing, obtain performance surety bonds, enter into long-term coal contracts and effectively represent coal companies before state and federal government officials regarding legislation and regulations critical to the survival of

2

coal industry companies, may be irreparably damaged by this libel. Given the paramount economic importance of the coal industry in Belmont County, it does not overstate the nature of this case to say that the damages from the libel detailed in the General Allegations below may have, and continue to have, a devastating impact on not only Plaintiffs and their employees, but the entire community.

## PARTIES

Plaintiffs

1. Plaintiff Robert E. Murray ("Plaintiff Murray") at all times mentioned is and was a resident of 47626 Meadowview Drive, St. Clairsville, Belmont County, Ohio, 43950, and is the President, Chief Executive Officer, and Chairman of Murray Energy Corporation, President and Director of American Energy Corporation, and Director of The Ohio Valley Coal Company.

2. Plaintiff Murray Energy Corporation ("Plaintiff Murray Energy") at all times mentioned is and was a corporation incorporated under the laws of the State of Ohio, with its principal office located in Cuyahoga County, Ohio.

3. Plaintiff American Energy Corporation ("Plaintiff American Energy") at all times mentioned is and was a corporation incorporated under the laws of the State of Ohio, with its principal office located in Monroe County, Ohio.

4. Plaintiff The Ohio Valley Coal Company ("Plaintiff Ohio Valley") at all times mentioned is and was a corporation incorporated under the laws of the State of Ohio, with its principal office located in Belmont County, Ohio. (Plaintiffs Murray, Murray Energy, American Energy, and Ohio Valley will be collectively referred to herein as the "Plaintiffs.")

Defendants

5. Defendant The Daily Gazette Company ("Defendant Gazette") at all times

mentioned is and was a corporation incorporated under the laws of the State of West Virginia, with its principal office located in Charleston, West Virginia. Defendant Gazette is a communications company engaged primarily in newspaper and Internet publishing. Defendant Gazette does business as the publisher of a daily newspaper in the State of West Virginia known as The Charleston Gazette, publisher of The Charleston Gazette website, www.wvgazette.com "Gazette Website"), and the Coal Tattoo blog, http://blogs.wvgazette.com/coaltattoo ("Coal Tattoo Blog").

6.  Defendant Daily Gazette Publishing Company, LLC ("Defendant Gazette Publishing") at all times mentioned is and was a corporation incorporated under the laws of the State of Delaware, with its principal office located in Charleston, West Virginia. Gazette Publishing is a communications company engaged primarily in newspaper and Internet publishing, including The Charleston Gazette, Gazette Website, and Coal Tattoo Blog.

7.  Defendant Gazette Holding Company, LLC ("Defendant Gazette Holding") at all times mentioned is and was a corporation incorporated under the laws of the State of Delaware, with its principal office located in Charleston, West Virginia. Gazette Holding is a communications company engaged primarily in newspaper and Internet publishing, including The Charleston Gazette, Gazette Website, and Coal Tattoo Blog.

8.  Defendant Charleston Newspaper Holdings, L.P. ("Defendant Charleston Holdings") at all times mentioned is and was a corporation incorporated under the laws of the State of Delaware, with its principal office located in Charleston, West Virginia. Charleston Holdings is a communications company engaged primarily is responsible for printing, circulating, promoting and marketing The Charleston Gazette, Gazette Website, and Coal Tattoo Blog.

9. Defendants Gazette Holding and Gazette Publishing are wholly-owned subsidiaries of Defendant Gazette. Defendant Gazette exercises corporate control over, and provides basic business policy, editorial services, quality control, and numerous other services to Defendants Gazette Holding and Gazette Publishing.

10. Defendant Charleston Holdings is a wholly-owned subsidiary of Defendants Gazette Holding and Gazette Publishing. Defendants Gazette Holding and Gazette Publishing exercise corporate control over, and provide basic business policy, editorial services, quality control, and numerous other services to Defendants Charleston Holdings.

11. The Charleston Gazette has hard copy sales of approximately 38,000 copies daily, including circulation in the State of Ohio. Upon information and belief, at times material herein, The Charleston Gazette, Gazette Website, and Coal Tattoo Blog were distributed in Belmont County, Ohio.

12. The Charleston Gazette, Gazette Website, and Coal Tattoo Blog are for-profit commercial publications that derive advertising revenue from the advertisements embedded in and around their publications. The Coal Tattoo Blog, particularly, has advertisements at the top of its webpage and embedded between articles, including the article at issue here.

13. Defendant Kenneth W. Ward, Jr. ("Defendant Ward") at all times mentioned is and was a resident of Kanawha County, West Virginia.

14. Defendant Ward at all times mentioned is and was employed by Defendant Gazette as a reporter for The Charleston Gazette and was acting within the scope of such employment at the times that he engaged in the acts and/or omissions described herein. (Defendants Gazette, Gazette Publishing, Gazette Holding, Charleston Holdings, and Ward will

be collectively referred to herein as the "Defendants.")

## VENUE

15. Venue properly lies in the Court of Common Pleas, Belmont County, Ohio, pursuant to Civ. R. 3(B)(3), (6), and (7) and 3(E) because Plaintiffs Murray and Ohio Valley are residents of Belmont County, and Defendants are a party subject to out-of-state service of process pursuant to Civ. R. 4.3.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

16. On or about July 18, 2012, Defendant Ward wrote an article entitled "Mitt Romney, Murray Energy and Coal Criminals" ("Coal Criminals Article").

17. On or about July 18, 2012, Defendants Gazette, Gazette Publishing, Gazette Holding, and Charleston Holdings published the Coal Criminals Article on the Gazette Website and Coal Tattoo Blog. The Coal Criminals Article was and is accessible to internet users in Belmont County, Ohio.

18. Defendants' Coal Criminals Article is of a false and defamatory manner, affirmatively stating and clearly implying that Plaintiffs Murray, Murray Energy, American Energy, and Ohio Valley are criminals. (The Coal Criminals Article is attached hereto as Exhibit A and incorporated herein by reference).

19. The title of Defendants' Coal Criminals Article (i.e., " Mitt Romney, Murray Energy and Coal Criminals"), intended to convey, and did convey, to the average reader, the false impression that Plaintiffs are criminals and act contrary to the public interest and/or in violation of laws.

20. The first paragraph of Defendants' Coal Criminals Article continues its false and defamatory statements by calling Plaintiff Murray a "renegade coal operator." This false accusation is an attack on Plaintiff Murray's character and, therefore, attacks the coal

6

mining companies in which Plaintiff Murray is involved, including Murray Energy, American Energy, and Ohio Valley.

21. Defendants' Coal Criminals Article persists to republish a deliberate concoction of lies, including that Ohio Valley slurry spill "killed more than 4,000 fish and animals" and "turned the creek black for 22 miles downstream." These are grossly exaggerated and baseless claims. The Ohio River is only sixteen (16) miles from the location of the accidental spill, clearly refuting the Defendants republication of this fabrication. This false statement may have, and continue to have, extremely adverse effects on Plaintiffs' businesses and injury to Plaintiffs' reputations.

22. Defendants' Coal Criminals Article further states and implies that Plaintiffs have an undue influence on presidential candidate Mitt Romney. These false and misleading statements may injure, and continue to severely injure, Plaintiffs' reputations in the general and business community and adversely affect their future ability to exercise their rights as citizens to credibly comment on legislation and other public matters affecting their businesses.

23. Defendants' Coal Criminals Article continues its false and defamatory statements, closing with: "The question for Governor Romney, of course, is whether he thinks criminal behavior by coal companies, especially when it kills workers and damages the environment, is acceptable. If not, why is he buddies with Bob Murray?" This statement intended to convey, and did convey, to the average reader that Plaintiff Murray is a criminal, dishonest, and scurrilous executive. In reality, Plaintiff Murray has a reputation for integrity and honesty, is not a criminal, has never killed anyone, and has diligently worked to preserve the environment. These false and misleading statements continue to severely and irreparably harm Plaintiffs.

24. Defendants never contacted Plaintiffs Murray, Murray Energy, American Energy, or Ohio Valley for comment on the Coal Criminals Article. In essence, the Coal Criminals Article is nothing more than a series of false and very damaging statements regarding Plaintiffs.

25. The impact of these false statements regarding Plaintiff Murray may, among other things, adversely affect the Plaintiffs in their business dealings with electric utility and other customers, equipment and material suppliers, surety bond providers, and lenders; adversely affect their credibility in participating in discussions with public officials, including regulatory agencies, regarding matters of concern to Plaintiffs' businesses; and generally injure Plaintiffs' reputation in the general community and coal industry.

26. The Coal Criminals Article was, and continues to be, widely distributed by Defendants through the Defendants' The Charleston Gazette, Gazette Website, Coal Tattoo Blog and other sources of circulation and publication to a wide and varied audience.

27. Due to the series of changes in the coal industry which have created great hardships for many coal companies and, more importantly, for their employees, the economic ramifications of the Coal Criminals Article to Plaintiffs, their employees, and the citizens of Belmont and surrounding counties are profound, and may result, and continue to result, in significant damages. Ohio's coal industry in particular has suffered from the changes in the coal industry. Although Ohio once had over 50,000 coal miners, it now has only about 4,200. Nonetheless, the remaining coal mines generate high-paying jobs in what are mostly poorer, Appalachian areas of eastern and southern Ohio, including Belmont County. In 1987, Plaintiff Murray founded Plaintiff Ohio Valley by mortgaging almost everything he and his wife possessed and by borrowing heavily from lenders and obtaining guarantees from future

customers. Today, his independently operated subsidiary companies employ about 3,400 people; mine coal in Ohio, Utah, Kentucky, and Illinois; operate river/truck/rail terminals on the Ohio River; rebuild longwalls and other underground mining equipment; and own additional coal properties in Pennsylvania and West Virginia. Plaintiff Murray, in part because he has worked in the coal industry since age 17, is a supporter of the coal industry and the benefits that states and localities, including Belmont County, receive from having a healthy coal industry. More importantly, Plaintiff Murray has worked tirelessly on behalf of his employees to ensure that they can continue to work in high paying jobs with safe working conditions so that they can continue to be productive members of society. The reputations of Plaintiffs Murray, Murray Energy, American Energy and Ohio Valley in the local and business community are of paramount importance to their continuing business operations. The ability of Plaintiff Murray Energy to borrow money from lenders on the private market, to secure performance bonds as required by federal and state law, and to enter into long-term agreements with utility companies is, for the most part, based on Plaintiffs reputation for honesty, as well as the strength of Plaintiff Murray's character and the fiscal soundness of Plaintiff Murray Energy, American Energy and Ohio Valley. Their reputation is also an extremely important part of their relationship with their employees, a relationship that has allowed the Plaintiffs' business operations to expand and succeed in a harsh business climate.

     28.    The Coal Criminals Article may further adversely affect Plaintiffs in their trades and businesses and injure their reputations by, among other things, severely harming Plaintiffs in their ability to assure lenders, bond providers, regulators, and others that Plaintiffs' business operations are not in jeopardy due to Plaintiff Murray's alleged criminal activity. For example, since the substantial funds provided to Plaintiffs by their lenders are critical to finance

9

the continued operations as well as growth of the business by acquisitions of coal mines and coal companies, the Defendants' publication of false and misleading quotations regarding Plaintiff Murray that were intended to convey that he is a criminal and untrustworthy executive, may adversely affect, and continue to adversely affect Plaintiffs' ability to secure such funds resulting in substantial lost business opportunities and economic losses. Coupled with loss of revenues from utility companies, diminishment of Plaintiffs' ability to credibly have input into issues affecting the economics or operation of Plaintiff Murray's business, and the loss of business from entities who decline to deal with Plaintiffs because they are believed to be criminal, dishonest and untrustworthy, economic losses may resulted, and continue to result, in the multi-million dollar range.

29. Plaintiff Murray is neither a public figure nor limited public figure in that he has neither voluntarily sought public nor media attention, nor has he achieved such status by reason of the notoriety of his achievements. Further, Plaintiff Murray's agreement to host a private fundraiser for presidential candidate Mitt Romney is not tantamount to thrusting himself into the forefront of a particular public controversy.

30. Plaintiffs Murray Energy, American Energy, and Ohio Valley are not public figures because they are not notorious to an average individual in areas where such businesses have a presence; the nature of Plaintiffs Murray Energy, American Energy, and Ohio Valley do not create a high profile or prominence in the public perception; and there is neither frequent nor intense media scrutiny of Plaintiffs Murray Energy, American Energy, and Ohio Valley. Rather, Plaintiffs Murray Energy, American Energy, and Ohio Valley are privately held corporations that maintain a low profile and are not notorious to average individuals in areas where this type of business has a presence.

## COUNT I
## LIBEL PER SE AGAINST DEFENDANTS

31. Plaintiffs restate and reallege Paragraphs 1-30 as if fully set forth herein.

32. The Coal Criminals Article contains numerous false statements of fact concerning Plaintiff Murray, Murray Energy, American Energy, and Ohio Valley.

33. Defendants Gazette, Gazette Publishing, Gazette Holding, and Charleston Holdings, acting on their own and/or through their agents, published, and continue to publish, the Coal Criminals Article through the Defendants' The Charleston Gazette, Gazette Website, Coal Tattoo Blog, and other sources of circulation and publication to a wide and varied audience.

34. Defendants Gazette, Gazette Publishing, Gazette Holding, and Charleston Holdings published, and continue to publish, the Coal Criminals Article through the Defendants' The Charleston Gazette, Gazette Website, Coal Tattoo Blog, and other sources of circulation and publication with knowledge of the falsity of the statements contained therein or with reckless or negligent disregard as to the truth or falsity of said statements.

35. Defendant Ward authored the Coal Criminals Article and caused it to be published through The Charleston Gazette, Gazette Website, Coal Tattoo Blog, and other sources of circulation and publication to a wide and varied audience.

36. Upon information and belief, Defendants caused the Coal Criminals Article to be published with knowledge of the falsity of the statements contained therein or with reckless or negligent disregard as to the truth or falsity of said statements.

37. The Coal Criminals Article is defamatory per se in that, on its face, it reflects upon Plaintiffs' reputations and/or characters in a manner that: (1) injures Plaintiffs' reputations and subjects Plaintiffs to public hatred, ridicule, shame, or disgrace; and (2) adversely affects Plaintiffs' trades and/or businesses.

38. The Defendants' actions were without lawful privilege or basis.

39. Because of such publication of the Coal Criminals Article, Plaintiff Murray also has been caused great mental pain and suffering and emotional anguish.

40. Because of such publication of the Coal Criminals Article, Plaintiffs may encounter more difficulty in securing performance surety bonds from lenders and may have to collateralize them at higher levels.

41. Because of such publication of the Coal Criminals Article, Plaintiffs' lenders may express concern about Plaintiff Murray's alleged criminal record and its impact on Plaintiffs' businesses.

42. Because of such publication of the Coal Criminals Article, Plaintiffs may suffer, and continue to suffer, difficulty in participating in discussions with public officials, including regulatory agencies, regarding matters of concern to Plaintiffs' businesses.

43. Because of such publication of the Coal Criminals Article, Plaintiffs may suffer, and continue to suffer, a loss of business opportunities and loss of potential and/or existing customers, as described above.

WHEREFORE, Plaintiffs request:

1. Judgment for general damages against the Defendants in an amount to be determined at trial, but more than $25,000.00.

2. Judgment for special damages against the Defendants in an amount to be determined at trial, but more than $25,000.00.

3. Judgment for punitive damages against the Defendants in an amount to be determined at trial, but in excess of $25,000.00;

4. Award to Plaintiffs of attorneys fees and costs of suit; and

5. Such other and further relief as the Court deems just and proper.

## COUNT II
## LIBEL PER QUOD AGAINST DEFENDANTS

44. Plaintiffs restate and reallege Paragraphs 1-43 as if fully set forth herein.

45. In the alternative, the Coal Criminals Article is defamatory per quod in that it is capable of being interpreted as reflecting upon Plaintiffs' reputations and/or characters in a manner that: (1) injures Plaintiffs' reputations and/or exposes Plaintiffs to public hatred, ridicule, shame, or disgrace; and (2) adversely affects Plaintiffs' trades and/or businesses.

46. Because of such publication of the Coal Criminals Article, Plaintiff Murray has been caused great mental pain and suffering and emotional anguish.

47. Because of such publication of the Coal Criminals Article, Plaintiffs may encounter more difficulty in securing performance surety bonds from lenders and may have to collateralize them at higher levels.

48. Because of such publication of the Coal Criminals Article, Plaintiffs' lenders may express concern about Plaintiff Murray's alleged criminal record and its impact on Plaintiffs' businesses.

49. Because of such publication of the Coal Criminals Article, Plaintiffs may suffer, and continue to suffer, difficulty in participating in discussions with public officials, including regulatory agencies, regarding matters of concern to Plaintiffs' businesses.

50. Because of such publication of the Coal Criminals Article, Plaintiffs may suffer, and continue to suffer, a loss of business opportunities and loss of potential and/or existing customers, as described above.

WHEREFORE, Plaintiffs request:

1. Judgment for general damages against the Defendants in an amount to be determined at trial, but more than $25,000.00.

2. Judgment for special damages against the Defendants in an amount to be determined at trial, but more than $25,000.00.

3. Judgment for punitive damages against the Defendants in an amount to be determined at trial, but in excess of $25,000.00;

4. Award to Plaintiffs of attorneys fees and costs of suit; and

5. Such other and further relief as the Court deems just and proper.

PLAINTIFFS DEMAND A TRIAL BY JURY IN THIS ACTION.

Dated: July 25, 2012

Respectfully submitted,

*/s/ Gary Broadbent/*
One of the Attorneys for Plaintiffs

Michael O. McKown (0013378)
29325 Chagrin Blvd #300
Pepper Pike, Ohio 44122
ph (216) 765-1240
fax (216) 765-2654


Gary M. Broadbent (0083876)
56854 Pleasant Ridge Road
Alledonia, Ohio 43902
ph (740) 926-1351
fax (740) 926-1615

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing document was served via U.S. Mail postage prepaid, this 25th day of July, 2012, to the following:

THE DAILY GAZETTE COMPANY,
a West Virginia Corporation
1001 Virginia Street East
Charleston, West Virginia 25301

DAILY GAZETTE PUBLISHING
COMPANY, LLC, a Delaware Limited
Liability Company
2711 Centerville Rd., Suite 400
Wilmington, Delaware 19808

DAILY GAZETTE HOLDING COMPANY,
LLC, a Delaware Limited Liability Company
2711 Centerville Rd., Suite 400
Wilmington, Delaware 19808

CHARLESTON NEWSPAPERS HOLDINGS,
L.P., a Delaware Limited Partnership
2711 Centerville Rd., Suite 400
Wilmington, Delaware 19808

MR. KENNETH W. WARD, JR., an
individual;
926 Greendale Drive
Charleston, West Virginia 25302

_____
One of the Attorneys for Plaintiffs