Exhibit 1:  recommended discovery plan

**Murray v. The Daily Gazette Company**
Case No. 2-12-cv-767

**Crux of the suit:**   The plaintiffs are in the coal business, and allege that they were libeled by a blog written by defendant Ken Ward.

The plaintiffs are amending their complaint to add a claim for the tort of false light invasion of privacy based on the same blog.

They expect to file the amended complaint before Tuesday, October 16, 2012, which is the deadline for the defendants to move or plead to the original complaint.

Ward is a reporter for the daily newspaper in Charleston, West Virginia, which is owned by one or more of the various related corporate defendants.

Ward's blog appeared on July 18, 2012. The content of Ward's blog:
_____

**Title:**  Mitt Romney, Murray Energy and coal criminals
_____

　　We've written before here on Coal Tattoo about the fact that renegade coal operator Bob Murray played a major role recently in a campaign fundraiser in Wheeling, W.Va. for Republican presidential candidate Mitt Romney.

Readers of this blog know well the record of Mr. Murray's company at the Crandall Canyon Mine in Utah, and may recall that one of Murray's subsidiaries pleaded guilty to criminal mine safety violations related to the August 2007 disaster that killed six mines and three rescue workers.

　　What you may not have heard — and certainly won't see reported by the media outlets that constantly promote the notion of a "war on coal" by the Obama administration — is that another of Murray's subsidiaries recently pleaded guilty to criminal Clean Water Act violations at one of its operations in Ohio.  Here's what The Associated Press reported last week:

An Ohio company pleaded guilty Friday to criminal violations of the federal Clean Water Act involving coal-wastewater spills into a southeast Ohio stream — spills that could cost the company more than $7 million.

The Ohio Valley Coal Company pleaded guilty to the two misdemeanor violations in U.S. District Court in Columbus in a plea agreement with federal prosecutors. The judge will review the agreement before deciding whether to approve it and the pleas, court officials said.

The agreement involved spills of wastewater into Captina Creek in Belmont County in 2008 and 2010. The 2010 spill of coal wastewater, or slurry, killed more than 4,000 fish and animals.

In addition to pleading to pleading to violating a federal water pollution permit, the company also will pay more than $1 million in federal and state fines and restitution under the agreement.
As part of the agreement, the company already has installed a $6 million double-walled slurry pipeline.

The U.S. Attorney's Office said Ohio Valley in 2008 "negligently" failed to sample and monitor the flow of pollutants discharged from a holding pond at its Powhatan Mine No. 6 and the illegal discharge of coal slurry turned the creek black for 22 miles downstream.

The 2010 pipeline rupture at a coal preparation plant in Beallsville that spilled thousands of gallons of slurry into the steam violated the company's wastewater discharge permit, prosecutors said.

Ohio Valley will pay a $500,000 fine to the federal government, $455,000 in fines and restitution to the Ohio Environmental Protection Agency and $95,000 in fines and restitution to the Ohio Department of Natural Resources, if the judge approves the agreement.

Captina Creek, considered to be one of the highest quality streams in the state, is one of the only Ohio locations where the state endangered and federally threatened Hellbender salamander is actively breeding, according to the Ohio EPA.

Interestingly, the U.S. Attorney's Office in Columbus successfully prosecuted two top Ohio Valley Coal mine managers — Donald Meadows and David Bartsch — for their roles in these crimes.

Both were sentenced to probation and community service.

The Ohio Environmental Law Center had this to say on its blog about the Murray plea agreement:

*The coal industry keeps telling us that today's coal is clean.*

*This guilty plea is prima facie evidence that coal is not, nor ever can be clean.*

*We need to loosen coal's stranglehold on our watersheds and on our coalfield communities.*

*The industry and its regulators at ODNR and Ohio EPA need to find alternatives to disposing of coal waste in our most healthy watersheds, and the Administration has to continue and increase its support for energy efficiency, co-generation, and renewable energy.*

The question for Governor Romney, of course, is whether he thinks criminal behavior by coal companies, especially when it kills workers and damages the environment, is acceptable.

If not, why is he buddies with Bob Murray?

_____

## Subject to the court's approval:

**Discovery during pendency of defense motion to dismiss for failure to state a claim**

If the defendants move to dismiss the upcoming amended complaint for failure to state a claim, the parties agree not to engage in discovery while that motion is pending.

If the defendants answer the upcoming amended complaint, instead of moving to dismiss it, the parties agree to begin discovery upon the filing of the answer.

**Bifurcating liability discovery from discovery about damages**

**Rationale for bifurcating discovery.** As is common in libel suits, the defense will move for summary judgment on liability on all counts. If the court were to grant such a motion, the court's decision would end this suit at the trial court level.

The plaintiffs, too, may decide to move for a summary judgment ruling that the defendants are liable for libel and false light.

So, to save the parties' money and to allow this matter to proceed speedily to the summary judgment phase, the parties have agreed to bifurcate discovery as between liability and damages.

**The nature of liability discovery.** The plaintiffs would depose Ken Ward and one or two editors at the newspaper. Those depositions would occur in Charleston, West Virginia. The scope of those depositions is limited to inquiries relevant to liability only, not damages.

The defense would depose plaintiff Robert Murray, and potentially one or two individuals who work for the plaintiff companies. Those depositions would occur in St. Clairsville, Ohio. The scope of those depositions is limited to inquiries relevant to liability only, not damages.

During the liability discovery phase, the parties will limit all inquiries to those that are relevant to liability, not damages. For example: The defense may engage in

written discovery aimed at obtaining evidence of whether any plaintiff deserves the status of public figure.

**Proposed deadline for completing liability discovery:**  Tuesday, January 15, 2013.

**Proposed deadline for moving for summary judgment:**  Tuesday, February 19, 2013 [Monday, Feb. 18 is a holiday].

**Proposed deadline for opposing summary judgment:**  Tuesday, March 19, 2013.

**Proposed deadline for reply:**  Tuesday, April 2, 2013 [two weeks]

**Damages discovery.**  If the court denies summary judgment, the damages phase of discovery will begin on the first business day after the court's order denying summary judgment.  Ideally, the discovery phase for damages would end four months later.

This proposed discovery schedule assumes that the court would resolve the summary judgment motions within 40 days after the close of briefing, and therefore assumes a ruling by Monday, May 13, 2013.

**The nature of damages discovery.** Each party-witness who was deposed during the liability phase may be deposed during the damages phase, but the interrogating party must limit all inquiries to those relevant to damages. The interrogating party may not ask questions related to liability, or to follow up on liability evidence obtained during the initial deposition of that witness.

The plaintiffs would seek, at a minimum, quantitative evidence of the number of visitors to the blog in question.

The defense would seek, at a minimum, evidence related to the damages and reputational harm described in the plaintiffs' complaint and amended complaint.

The evidence sought in the damages phase likely would include deposing third parties and serving subpoenas duces tecum upon third parties, such as banks.

**Proposed deadline for completing damages discovery:**  Monday, September 23, 2013.

**Proposed trial date:**  At least 45 days after completing damages discovery, taking into account the need to depose damages experts:   beginning Monday, November 5, 2013.

-o-

6